UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 12, 2019

LETTER TO COUNSEL

      RE:    *Patricia W. v. Berryhill*
                Civil No. 1:19-cv-00009

Dear Counsel:

      On January 2, 2019 Patricia W. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claims for Supplemental Security Income ("SSI"). (ECF No. 1). I have considered the parties' cross-motions for Summary Judgment, and Plaintiff's reply. (ECF Nos. 15, 16 & 17). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will **DENY** both motions, **REVERSE** the judgment of the SSA, and **REMAND** the case for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

      Plaintiff protectively filed her application for SSI on July 23, 2014, alleging an onset date of February 19, 2010. (Tr. 164–173). Her claims were denied initially, and again on reconsideration. (Tr. 109–10). A hearing was held on May 10, 2017 before ALJ Raghav Kotval. *Id.* at 12–32. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. *Id*. The Appeals Council affirmed (Tr. 1–6), and consequently the ALJ's decision constitutes the final, reviewable decision of the SSA.

      In arriving at the decision to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work," by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If he makes the requisite showing, the burden shifts to the Social Security Administration at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the

national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

In this case, at step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since July 23, 2014. (Tr. 17). At step two, the ALJ determined that during the relevant time frame, Plaintiff suffered from the severe impairments of "osteoarthritis of the right knee, arthritis of the left knee, degenerative disc disease of the lumbar spine, obesity, fibromyalgia, undifferentiated and mixed connective tissue disease, asthma, edema of the lower extremities, and affective disorder." *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 37–38. Then, "[a]fter consideration of the entire record," the ALJ determined that Plaintiff has the RFC to:

> [P]erform sedentary work as defined in 20 CFR 416.967(a) except the claimant can lift, carry, push, and pull 10 pounds occasionally and less than ten pounds frequently. She can sit for six hours in an eight-hour workday, and stand and walk for two hours in an eight-hour workday. The claimant should never climb ladders, ropes, or scaffolds. The claimant could occasionally climb ramps, stairs, balance, and stoop, kneel, crouch, and crawl. The claimants can perform simple, routine tasks, not at a production pace. She must avoid all exposure to concentrated odors, gases, fumes, or poor ventilation. Due to the combined effects of the claimant's conditions, she would be off task for ten percent of a workday. (Tr. 20).

After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform her past relevant work but could perform other jobs existing in significant numbers in the national economy. (Tr. 26–27). Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame. *Id.* at 27.

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

On appeal, Plaintiff sets forth two arguments: (1) the ALJ erred by setting forth an inadequate hypothetical, rending the ALJ's RFC determination and step-five conclusion unsupported by substantial evidence (ECF No. 15 at 9); and (2) the ALJ failed to conduct a function-by function assessment, specifically, he did not explain his finding that Plaintiff would be "off task for ten percent of a workday" due to the combined effects of her conditions. (ECF No. 15 at 12).

I agree with Plaintiff that the ALJ's conclusion was not supported by substantial evidence because the hypothetical posed to the VE was flawed. The ALJ's hypothetical to the included the term "non-production job tasks," but provided no definition of such. (Tr. 65–68). The phrase "not at the production pace" appears to be analogous but that deemed problematic by the Court of Appeals for the Fourth Circuit in *Thomas v. Berryhill*, 916 F.3d 307, 313–14 (4th Cir. 2019). In *Thomas*, the Court held that the ALJ's failure to define "production rate or demand pace" was fatal to the RFC assessment because the lack of clarity frustrated appellate review. 916 F.3d at 312; see also *Perry v. Berryhill*, 765 Fed. App'x 869 (4th Cir. 2019) (unpublished) (remanding for ALJ's failure to define "non-production oriented work setting"). Given the Fourth Circuit's criticism of the phrases "production rate" or "demand pace" in *Thomas*, or lack thereof, this Court cannot adequately say whether the ALJ's inclusion of "non-production job tasks" in the RFC limitation was harmless. See *Marion J. v. Comm'r, Soc. Sec.*, No. SAG-18-2407, 2019 WL 2290496, at *2 (D. Md. May 29, 2019). Therefore, remand is warranted to allow the ALJ to clarify the RFC assessment and hypothetical to the VE, in order to establish that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion. *Marion*, 2019 WL 2290496, at *2.

Second, Plaintiff identifies that the ALJ failed to provide an explanation for his conclusion that "[d]ue to the combined effects of the claimant's conditions, [Plaintiff] would be off task for ten percent of a workday." (Tr. 20). Aside from this mention in the RFC assessment, the only other dialogue pertaining to the percentage occurred during the hearing. The VE testified that if Plaintiff were only off task for 10% of the day, there would be jobs available for her to perform, but that if she were to be off task any more than 10%, there would not be. *Id.* at 70. The VE clarified that this explanation was based on experience, rather than the DOT. *Id.* In addition, Plaintiff's Counsel asked the VE if the aforementioned jobs would still be able to be performed in a "competitive work environment," if the hypothetical individual was required to elevate her legs at least four hours a day. *Id.* at 71. The VE responded that this would eliminate such work, and such would likely require a special, beneficent employer that would tolerate that. *Id.* Plaintiff's Counsel asked if, basically, the VE was saying that such a requirement would amount to Plaintiff being more than 10% off task, and the VE agreed. *Id.*

The evidence[1] described by the ALJ certainly suggests that Plaintiff would have difficulty staying on task throughout an entire workday. In its briefing the Commissioner sketches the ALJ's

---

[1] The ALJ considered: Plaintiff's testimony (Tr. 21) (describing her daily routine, and what was within her function report, and a determining Plaintiff's statements concerning the intensity, persistence, and limiting effects were not entirely consistent with the medical evidence in the record); Dr. Parsa's mental status examination (Tr. 22) (noting Plaintiff's depression was mild, and her mini-mental status evaluation was indicative of generally intact functioning, however, Plaintiff's responses to PHQ-9 questionnaire fell within the severely depressed range); Dr. Mroz, Plaintiff's primary care physician (Tr. 22) (finding normal and appropriate mood); examinations from the Nasseri Clinic of Arthritic and Rheumatic Diseases and Multi-Specialty Health Care (Tr. 23) (indicating Plaintiff's physical examinations showed consistent findings of a limited range of motion); Imagining studies (Tr. 24) (noting her MRI, and x-rays, supported restricting the claimant to a reduced range of sedentary exertional level); Dr. Cowdrey's treatment notes (Tr. 24) (detailing that prior rheumatologist diagnosed Plaintiff with lupus in 2010, however a later rheumatologist decided against this diagnosis, and recommending Plaintiff lessen her body weight); State agency medical consultant Dr. Titanji (Tr. 25) (opining Plaintiff could engage in a reduced range of light exertion/sedentary exertion); the opinion of state agency consultant Dr. Hakkarian (Tr. 25) (noting evidence indicated Plaintiff was somewhat more limited than previously determined, and providing additional environmental limitations for Plaintiff's

3

thorough analysis of the case as a whole. (ECF No. 16-1 at 13). Even so, the ALJ failed to explain how he reached the conclusion of 10%. This Court is not in a position to determine, in the first instance, whether Plaintiff would be off-task 10%, 15 %, 5% or 13 % of the time. *Kane*, 2018 WL 2739961, at *2. Given the VE's testimony, rendering the percentage of time off-task to be work-preclusive, the ALJ failed to fulfill the duty of explanation on this issue, and remand is warranted. *See Sheila K v. Comm'r*, No. SAG-17-cv-01252, 2018 WL 2739961, at *1 (D. Md. May 14, 2018) (assigning a precise percentage of time off-task constituted a critical part of the disability determination); *Petry v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-cv-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (requiring specific explanation as to how the ALJ's percentage was calculated, as one percent increase could preclude competitive employment). Absent further explanation, the Court is unable to ascertain how the ALJ determined the ten percent figure and how that determination impacted the RFC assessment. In remanding for additional explanation, I express no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**, and Defendant's Motion for Summary Judgment (ECF No. 16) is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's is **REVERSED**, and the case is **REMANDED** for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket is as such. A separate order will issue.

/s/
J. Mark Coulson
United States Magistrate Judge

---

asthma); and Dr. Poemerantz, the consultative examiner (Tr.26) (affording partial weight to this opinion insofar that claimant's condition fulfilled the de minimus requirement to establish severity).